IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RALPH TURNER CASEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 2:24-cv-02660-SHL-tmp |
| CATHOLIC DIOCESE OF MEMPHIS and SACRED HEART CATHOLIC CHURCH, | ) ) ) |
| Defendants. | ) ) |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

Before the Court is Defendants Catholic Diocese of Memphis and Sacred Heart Catholic Church's ("Defendants") Motion to Dismiss, filed November 19, 2024. (ECF No. 12.) Defendants argue that Plaintiff Ralph Turner Casey's claims are time-barred by the statute of limitations and that tolling doctrines are inapplicable. Casey responded on December 23, 2024 (ECF No. 15), and Defendants replied on January 1, 2025 (ECF No. 18). For the reasons discussed below, the Motion is **DENIED**.

**BACKGROUND**[1]

In his Complaint, Casey alleges that, as a child, between 1979 and 1983, he was sexually assaulted by Father Joel Wiggs. (ECF No. 1 at ¶ 1.) According to him, this misconduct occurred on a weekly basis during a time when Defendants had supervisory authority over Wiggs. (See id. at ¶¶ 8, 19.)

According to Casey, Wiggs was a "frequent fixture" around him and his family. (Id. at ¶¶ 22–23.) When Casey was around ten or eleven years old, Wiggs started taking him and other

---

[1] The following facts come from the Complaint (ECF No. 1), unless otherwise noted, and are accepted as true in considering this Motion.

boys on outings, which turned into sleepovers. (Id. at ¶¶ 24–26, 30, 32.) Casey alleges that Wiggs pressured the boys to not wear clothing during the outings. (Id. at ¶¶ 27–29.) Wiggs also invited Casey to a sleepover at the rectory when he was in fifth grade, followed by many more similar events. (Id. at ¶¶ 30, 32–33.) Over the next approximately three years, according to Casey, Wiggs abused him at least once a week. (Id. at ¶¶ 33, 37.)

Wiggs retired from ministry in 1995 and died in 2001. (Id. at ¶¶ 11, 18.) On October 17, 2023, the local newspaper, The Commercial Appeal, featured Casey in an article about Wiggs. (Id. at ¶¶ 38, 101.) In the article, Casey stated that he was "'99% certain [he] couldn't have been the only one'" who had been abused by Wiggs.[2] (ECF No. 12-2 at PageID 70.) He thought of a few other boys that may have also been abused; however, he stated that they have since died. (Id. at PageID 72.)

On or after the article's publication, "multiple other people contacted Casey to inform him about other survivors of abuse by Wiggs, including one person who was aware that the abuse had been reported to the Diocese of Memphis." (ECF No. 1 at ¶ 38.) According to Casey, he had "no way of knowing" previously that "Wiggs was a recurring problem within the Diocese of Memphis and Sacred Heart, rather than a man who had solely abused [Casey]" or "that the Diocese of Memphis and Sacred Heart knew or should have known that Wiggs posed a threat to children." (Id. at ¶¶ 39–40.) It was after the article's publication that "[Casey] only realized the extent of the Diocese's and Sacred Heart's concealment of Wiggs's sexual abuse." (Id. at ¶ 101.) According to him, "[o]nce the Commercial Appeal article was published, Casey initiated the

---

[2] The article was attached to the Motion to Dismiss (ECF No. 12-2) as an exhibit. Courts may consider an exhibit to a motion to dismiss as long as it is referenced in the complaint and "central" to the plaintiff's claims. FedEx Ground Package Sys., Inc. v. Route Consultant, Inc., 97 F.4th 444, 455 (6th Cir. 2024) (citation modified). Because the article is referenced in the Complaint and fundamental to Casey's claims, the Court considers it here.

filing of this suit as he realized the gravity and severity of what the Diocese and Sacred Heart had done to obfuscate the truth." (Id. at ¶ 103.)

Casey alleges that, upon learning about Wiggs' abuse, Defendants "actively took steps to protect Wiggs, conceal their own wrongdoing in supervising (or failing to supervise) Wiggs, and prevent survivors of abuse by Wiggs from filing civil lawsuits." (Id. at ¶ 42.) For instance, Casey alleges that:

> It is the practice of the Roman Catholic Church in general, and the Diocese of Memphis in particular, through its cardinals, bishops, priests and other officials and agents, to conceal instances of child sexual abuse and complaints by victims. Dioceses zealously maintain the secrecy of the horrifying truth of rampant child sexual abuse by, among other things:
>
> a. Failing to disclose complaints to law enforcement officials, parishioners and the public;
> b. Maintaining secret archives and files of evidence of sex abuse, accessible only to the bishops;
> c. Instructing Church officials in destruction of incriminating documents and spoliation of evidence regarding sexual abuse by clergy;
> d. Transferring sex offending clergy to Church facilities in other locations where their pasts would not be known to parishioners, and the abusers would have a "fresh start" with a new group of vulnerable children;
> e. Threatening and coercing victims and their families to withdraw complaints and retract allegations of sexual abuse;
> f. Paying "hush money" to victims and their families, in exchange for promises of nondisclosure and confidentiality

(Id. at ¶ 43.) Casey adds that "[i]t is similarly the practice of Roman Catholic Church parishes in general, and Sacred Heart in particular, through its officials, agents, servants, and employees, to conceal instances of child sexual abuse and complaints by survivors . . . . [and p]arishes actively collaborate with dioceses in the activities described in the previous paragraph." (Id. at ¶ 44.)

Casey also alleges that Defendants misrepresented facts about Wiggs "while concealing and withholding information from the community, including [Casey], his peers, and his parents." (Id. at ¶¶ 120–21.) He contends that, despite their knowledge of the abuse, Defendants

3

misrepresented Wiggs' ability to serve, elevated him into leadership positions he was unfit for, and chose not to investigate him. (See id. at ¶¶ 120–23.) During the alleged abuse itself, Casey states that "[he] and his parents acquiesced because they all believed Wiggs to be an honorable authority figure who deserved their respect and deference, and did not believe that a representative of the Diocese and Sacred Heart would do anything untoward." (Id. at ¶ 31.)

Decades after the alleged abuse, Casey brings suit against Defendants for negligence and negligence per se (Count I), negligent supervision, monitoring, and retention (Count II), negligent training (Count III), breach of fiduciary duty (Count IV), constructive fraud (Count V), fraud (Count VI), intentional infliction of emotional distress (Count VII), and negligent infliction of emotional distress (Count VIII). (Id. at ¶ 2, PageID 7–25.) In the Motion to Dismiss, Defendants argue that Casey's claims are time barred and thus fail as a matter of law. (See ECF No. 12-1 at PageID 49.) Casey responds that the limitations period should be tolled based on the discovery rule.[3] (See ECF No. 15 at PageID 81.) He argues that he could not have brought these claims against these Defendants within the statute of limitations period. (Id. at PageID 92.)

## ANALYSIS

In assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001) (citing Mayer v. Mylod, 988 F.2d 635, 637–38 (6th Cir. 1993)). Here Defendants rely on the affirmative defense of statute of limitations as the basis for their Motion. (See ECF

---

[3] The parties also dispute if the doctrine of fraudulent concealment allows the statute of limitations to toll. (ECF Nos. 12-1 at PageID 51, 15 at PageID 81.) Because this tolling doctrine's applicability is irrelevant to the outcome here, there is no need to address this issue.

No. 12 at PageID 46.)  Although a plaintiff need not plead a lack of affirmative defense, there is an obligation to allege facts to demonstrate that the claim is timely.  See Bishop v. Lucent Techs., Inc., 520 F.3d 516, 520 (6th Cir. 2008).  And once a defendant asserts a statute of limitations defense, the plaintiff has the burden to demonstrate timeliness, which can be shown by the application of the discovery rule or another tolling exception which pauses the limitations period.  Smith v. Hilliard, 578 F. App'x 556, 563–64 (6th Cir. 2014) (internal citations omitted).

The parties do not dispute that Casey's claims are subject to a one-year statute of limitations.  (See ECF Nos. 15 at PageID 91; 18 at PageID 99–100.)[4]  Rather, the question here turns on whether the discovery rule allows the tolling of Casey's claims.  In a diversity action such as this, a federal court applies the forum state's tolling provisions.  Jackson v. Kingdom Hall of Jehovah Witness, No. 1:22-cv-01133-STA-jay, 2023 WL 2674181, at *4 (W.D. Tenn. Mar. 1, 2023), report and recommendation adopted, No. 1:22-cv-01133-STA-jay, 2023 WL 2668004 (W.D. Tenn. Mar. 28, 2023) (citing Bishop v. Children's Ctr. for Dev. Enrichment, 618 F.3d 533, 537 (6th Cir. 2010)).

Defendants argue that dismissal is appropriate because Casey had long been aware of ample facts that would have put him on notice of claims against Defendants.  (ECF No. 12-1 at PageID 50.)  According to Defendants, Casey knew that he had causes of action against Wiggs for battery and outrageous conduct, and told The Commercial Appeal that he was "99.9[]% certain he was not the only victim."  (Id. at PageID 50, 55–56.)  Once on notice of claims against

---

[4] Tennessee law, which applies to this case brought based on diversity jurisdiction, provides a one-year statute of limitations for "injuries to the person."  Tenn. Code Ann. § 28-3-104(a)(1)(A).  A minor alleging "injuries to the person" would have until age nineteen to file a lawsuit.  Id.; Tenn. Code Ann. § 28-1-106(a).  Thus, because the abuse allegedly occurred between 1979 and 1983 and Casey turned 18 in 1986, without tolling, he would have had until his nineteenth birthday in 1987 to file suit.  (See ECF Nos. 1 at ¶ 49, 12-1 at PageID 53.)

5

Wiggs, Defendants argue that Casey could have filed suit against him, and, through discovery, obtained information as to other defendants and claims. If Casey had followed this path, he would have learned of a potential negligent supervision claim as, under Tennessee employment law, Defendants could be liable for their employees' actions taken within the scope of their employment, as well as for hiring an employee whom they knew or should have known was unfit. (Id. at PageID 56–59.) Therefore, according to Defendants, Casey could have brought claims against them after he brought suit against Wiggs in the 1980's. (Id.) Even if Casey could not determine who such a claim would be against, Defendants argue that the lack of an ability to identify the specific defendant does not toll the statute. (Id. at PageID 62.)

Casey responds that the cause of action did not accrue until he discovered those who perpetuated the harm, in addition to identifying the harm itself. (ECF No. 15 at PageID 82 (citing Redwing v. Catholic Bishop for Diocese of Memphis, 363 S.W.3d 436, 458, 462 (Tenn. 2012)).) While he knew Wiggs had harmed him, Casey contends that he could not have reasonably discovered the different harms perpetuated by these Defendants until the October 17, 2023 article in The Commercial Appeal. (ECF No. 15 at PageID 81–90.)

"Under the current discovery rule, a cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of 'facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct.'" Redwing, 363 S.W.3d at 459 (quoting Carvell v. Bottoms, 900 S.W.2d 23, 29 (Tenn. 1995)) (modification in original). At this stage, all factual allegations in the Complaint are accepted as true in assessing knowledge.

To determine when a plaintiff would have sufficient information to put him on notice, which would trigger the running of the statute of limitations, courts use the term "inquiry

notice." See id. (internal citations omitted).  In other words, could Casey have plausibly determined Defendants' alleged roles in his injuries before the October 17, 2023 article, based on what he did know about Wiggs' actions?  If Casey alleges that he plausibly could not trace Defendants' involvement, the discovery rule tolls the statute.

  Here, the Tennessee Supreme Court's approach in Redwing is persuasive.  In Redwing, a victim of alleged abuse by a priest in the 1970s filed suit against the Diocese after the priest passed away and over thirty years after the alleged abuse took place.  363 S.W.3d at 441–42.  The Redwing plaintiff argued that the Diocese breached its fiduciary duties and acted negligently when hiring, retaining, and supervising the priest.  Id. at 442–43.  He asserted that the Diocese "was aware or should have been aware" of the priest's predatory behaviors and that the Diocese misled him and his family.  Id. at 453.  He also contended that the Diocese took active steps to prevent victims, including the plaintiff, from filing suit.  Id.  In its Tennessee Rule of Civil Procedure 12.02(b) motion to dismiss, the Diocese argued that the statute of limitations barred the plaintiff's complaint because three decades had passed since the alleged abuse.  Id. at 443.

  The Redwing court concluded that "the discovery rule would apply in precisely the same way that it would apply in circumstances in which the plaintiff did not know or have reason to know that he or she had been injured."  Id. at 462 (internal citations omitted).  According to the court, "the pivotal issue [was] whether [the plaintiff] would have discovered the Diocese's allegedly wrongful acts had he exercised reasonable care and diligence."  Id. at 466.  Given that the question arose in the context of a motion to dismiss, where the plaintiff's allegations are viewed in the light most favorable to him, the court found that there were sufficient allegations to make dismissal premature at that stage.  Id. at 465–67.

7

Although not identical, Casey observed that "[h]ere, the facts mirror Redwing." (ECF No. 15 at PageID 82.) Both cases involve similar claims, and lawsuits brought decades after alleged abuse. Casey argues that, before the October 17, 2023 article, he "had no way of knowing that Wiggs was a recurring problem within the Diocese of Memphis and Sacred Heart, rather than a man who had solely abused [Casey]." (ECF No. 1 at ¶ 39.) Critically, he contends that he "had no way of knowing that the Diocese of Memphis and Sacred Heart knew or should have known that Wiggs posed a threat to children." (Id.) Given that these allegations must be accepted as true and viewed in the light most favorable to Casey at this stage, dismissing the complaint at this point would be premature.

Defendants argue that here, unlike Redwing, "the Complaint and Article contain numerous more detailed factual allegations that demonstrate Casey was put on inquiry notice years ago of his potential claims against Wiggs, Sacred Heart, and the Diocese." (ECF No. 12-1 at PageID 52 n.14.) According to Defendants, Casey knew Defendants had supervisory authority over Wiggs and had all the details related to Wiggs' actions—that Casey was likely not the only victim, that Wiggs was often surrounded by boys who spent the night at his house, and that some of the abuse occurred in the rectory itself—so he should have brought suit earlier. (Id. at PageID 50.) They also point out that Casey told relatives about the abuse and tried to confront Wiggs years ago. (Id.)

But these details do not change the outcome. In Redwing, the court noted that the plaintiff had sufficient facts years earlier related to the abuser. 363 S.W.3d at 464 (citing Redwing v. Catholic Bishop for Diocese of Memphis, No. W2009–00986–COA–R10–CV, 2010 WL 2106222, at *7 (Tenn. Ct. App. May 27, 2010)). However, that court also ruled that it was "premature" to dismiss the complaint against the Diocese defendant. Id. Here, like in Redwing,

8

Casey knew about his claims against Wiggs, but there are sufficient allegations that he did not know of the claims against these Defendants. Rather, taking the allegations as true, he used reasonable diligence to uncover his claims against these Defendants.

Defendants argue that Redwing does not apply here, relying on other cases where it was not applied. But Defendants' argument that every post-Redwing Sixth Circuit case "on this issue" has limited Redwing to its facts, and instead cited to Schultz v. Davis, 495 F.3d 289 (6th Cir. 2007) (ECF No. 12-1 at PageID 62), is not persuasive because the Schultz facts are inapposite. In Schultz, a case decided before Redwing, 120 pounds of sheetrock from a construction project fell on a prospective homebuyer touring the property. 495 F.3d at 291. The plaintiff brought suit against the general building contractor a little over a month after the incident and subsequently filed multiple amended complaints, two of which were filed after the statute of limitations period expired. Id. One of the new parties—the alleged supplier of the drywall that fell on the plaintiff, added a day after the statute of limitations expired—moved to dismiss. Id.

The Sixth Circuit, applying Tennessee law, determined that the "discovery rule" did not toll the statute of limitations, for the plaintiff's injuries were "immediate and apparent." Id. at 292. The Schultz plaintiff knew everything about the injury, including the drywall's role, on the day of the incident. Id. According to the court, a reasonable plaintiff would have been able to determine the identities of the other defendants well within the statute of limitations time period. Id. at 292–93.

Defendants also rely on an Eastern District of Tennessee case, Smith v. Amazon Fulfillment Services, Inc., No. 1:18-CV-276-TAV-SKL, 2021 WL 4693522 (E.D. Tenn. Oct. 7, 2021). In Amazon Fulfillment Services, plaintiff truck driver tripped on a cone that one of the

9

defendants' employees allegedly placed, without warning, on the driver's side of the plaintiff's truck on a loading dock.  2021 WL 4693522, at *1.  The plaintiff sustained injuries and brought a negligence claim on the date the statute of limitations would have expired.  Id. at *1, *3.  Based on discovery, the plaintiff sought to add the company that managed the loading dock as a defendant nearly two years later.  Id.  Because the plaintiff failed to allege that she could not have discovered the other defendant with reasonable diligence and care, the court concluded that she did not meet her burden to toll the statute of limitations.  Id. at *4.  In so ruling, the court relied, in part, on the fact that other federal courts had limited Redwing to its facts.  Id. at *3–4 (internal citations omitted).

      Even if Redwing were limited to its facts, Schultz and Amazon Fulfillment Services are inapposite.  In both cases, plaintiffs were hurt in specific incidents and had all the information necessary to find the parties responsible for the negligence at issue, a falling wall and a misplaced cone.  Here, Defendants face claims based on their own actions or inaction, different than Wiggs' actual conduct.  While the injuries and potential claims in Schultz and Amazon Fulfillment Services were apparent immediately, here, based on the Complaint, Casey could not have uncovered Defendants' responsibility for the alleged injuries without much different information than that which came from Wiggs' actions.  Unlike Amazon Fulfillment Services, Casey alleges that he could not have discovered Defendants' roles in perpetuating his injuries even with reasonable diligence and care.

      Moreover, Defendants' argument that the statute of limitations should not toll because Casey could have conducted discovery through another lawsuit—with different claims against a different defendant—is devoid of merit.  There is no legal support that, under Redwing and its

10

progeny, Casey hypothetically conducting discovery—in a never-filed case against Wiggs—should constitute "inquiry notice."

## CONCLUSION

The Tennessee Supreme Court decision previously addressed the issue here, complete with similar facts, and thus is highly instructive. The Court finds that the statute of limitations does not bar Plaintiff's claims at this stage. Therefore, Defendants' Motion to Dismiss the Complaint is **DENIED**.

**IT IS SO ORDERED,** this 3rd day of July, 2025.

                                                     s/ Sheryl H. Lipman
                                                   SHERYL H. LIPMAN
                                                   CHIEF UNITED STATES DISTRICT JUDGE