IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RALPH TURNER CASEY, )<br>　Plaintiff, )<br>)<br>v. )<br>)<br>CATHOLIC DIOCESE OF MEMPHIS and )<br>SACRED HEART CATHOLIC CHURCH, )<br>　Defendants. ) | No. 2:24-cv-02660-SHL-tmp |

**ORDER CONDITIONALLY GRANTING PLAINTIFF'S MOTION FOR
VOLUNTARY DISMISSAL WITHOUT PREJUDICE AND
TEMPORARILY SUSPENDING SCHEDULING ORDER**

Before the Court is Plaintiff Ralph Turner Casey's Motion for Voluntary Dismissal, filed September 19, 2025. (ECF No. 74.) In the Motion, Casey requests that his case be dismissed "without prejudice" and "without taxation of costs." (Id. at PageID 387.) Defendants Catholic Diocese of Memphis and Sacred Heart Catholic Church responded four days later. (ECF No. 75.) Within a week, Casey also filed a Consent Motion for Protective Order Staying Deposition of Plaintiff. (ECF No. 76.)

For the following reasons, (1) the motion for voluntary dismissal without prejudice is **GRANTED** subject to the conditions described below, and (2) although the Court does not grant a protective order or a stay, it nevertheless **SUSPENDS** the scheduling order deadlines in this case pending Casey's acceptance of the conditions placed on dismissal.[1]

---

[1] Because this Order suspends Casey's deposition along with the rest of the deadlines in the scheduling order for now, the motion for protective order is **DENIED AS MOOT**.

## BACKGROUND

In his Complaint, Casey alleges that, as a child, specifically between 1979 and 1983, he was sexually assaulted by Father Joel Wiggs. (ECF No. 1 at ¶ 1.) According to him, this misconduct occurred on a weekly basis during a time when Defendants had supervisory authority over Wiggs. (See id. at ¶¶ 8, 19.) Wiggs retired from the ministry in 1995 and died in 2001. (Id. at ¶¶ 11, 18.) On October 17, 2023, local newspaper The Commercial Appeal featured Casey in an article about Wiggs. (Id. at ¶¶ 38, 101.) In the article, Casey stated that he was "'99% certain [he] couldn't have been the only one'" who had been abused by Wiggs. (ECF No. 12-2 at PageID 70.) He thought of a few other boys that may have also been abused; however, he stated that they have since died. (Id. at PageID 72.)

After the article's publication, according to the complaint, "multiple other people contacted Casey to inform him about other survivors of abuse by Wiggs, including one person who was aware that the abuse had been reported to the Diocese of Memphis." (ECF No. 1 at ¶ 38.) Casey stated that he had "no way of knowing" previously that "Wiggs was a recurring problem within the Diocese of Memphis and Sacred Heart, rather than a man who had solely abused [Casey]" or "that the Diocese of Memphis and Sacred Heart knew or should have known that Wiggs posed a threat to children." (Id. at ¶¶ 39–40.) It was only after the article's publication that Casey "realized the extent of the Diocese's and Sacred Heart's concealment of Wiggs's sexual abuse." (Id. at ¶ 101.) According to him, "[o]nce the Commercial Appeal article was published, Casey initiated the filing of this suit as he realized the gravity and severity of what the Diocese and Sacred Heart had done to obfuscate the truth." (Id. at ¶ 103.)

Defendants moved to dismiss the complaint as time barred. (ECF No. 12.) The Court denied the motion to dismiss, adopting the reasoning of the Tennessee Supreme Court that a

2

cause of action does not accrue until the plaintiff discovers those who perpetuated the harm against him. (ECF No. 48 at PageID 245 (citing Redwing v. Cath. Bishop for Diocese of Memphis, 363 S.W.3d 436, 467 (Tenn. 2012)).) Here, the Court concluded, there are sufficient allegations that the case was filed within the limitations period, based on when Casey discovered that Defendants were liable for negligent supervision. (Id.)

Defendants moved twice for sanctions against Casey. (ECF Nos. 49, 63.) Both motions arose out of Casey's response to an interrogatory requesting the identity of the victims who contacted him after the October 2023 article was published. (ECF No. 63 at PageID 319.) In response to a motion to compel, Casey submitted a sworn declaration identifying "A" and "B" as two victims who "let [him] know that they were personally abused by Father Wiggs." (Id.) Casey stated that these two victims asked him "not to drag them into this litigation," and that he objected to the interrogatory because it sought information that the victims asked him "to keep private at this time." (Id. at PageID 319–20.) But later, after the Magistrate Judge granted the motion to compel and directed Casey to answer the interrogatory (ECF No. 45), and after Defendants filed their first motion for sanctions due to Casey's failure to comply with that order (ECF No. 49), Casey answered under penalty of perjury that "[n]o person" had informed him that "they had also been abused by Wiggs," although he had heard indirectly that other victims existed (ECF No. 63 at PageID 321). Defendants then filed the motion for sanctions for perjury, seeking the dismissal of the complaint. (ECF No. 63.) In response, Casey did not appear to defend the contradiction, but rather argued that Defendants should have taken his deposition before moving for sanctions. (ECF No. 70.) The Court has not yet ruled on either motion for sanctions.

Three weeks later, Casey filed this motion for voluntary dismissal. (ECF No. 74.) In the

3

motion, he explains that dismissal is required "because of his understandable reticence to disclose personal information which he received in confidence from sexual abuse survivors." (Id. at PageID 392.) He argues that dismissal will not prejudice Defendants because "only eleven motions have been filed" in twelve months in this case and because Casey "has litigated the case in a timely and diligent fashion." (Id. at PageID 390–92.) Defendants respond that dismissal without prejudice is inappropriate at this stage, with two pending motions for sanctions and "less than one month left before discovery closes." (ECF No. 75 at PageID 398.) According to Defendants, any dismissal must only be with prejudice so that Casey does not "escape any consequences of his misconduct." (Id.) If, however, the Court does grant a voluntary dismissal without prejudice, Defendants ask that it be under the conditions that: "(1) any refiling must occur in this Court, and that the sanctions motions would then be addressed, and (2) at the time of refiling Casey should be required to pay the attorneys fees for the Defendants from the first suit." (Id.)

Then, ten days after Casey's motion for voluntary dismissal, and nearly a week before the day set for Defendants to depose him, Casey filed the Consent Motion for Protective Order Staying Deposition of Plaintiff. (ECF No. 76.) In the motion, Casey explains that, while his motion for voluntary dismissal is pending, "he does not want to reveal the identity" of victims during his deposition. (Id. at PageID 413.) For their part, Defendants do not want to skip the deposition only to find, after discovery has closed, that the Court is not dismissing the case after all. (Id. at PageID 414.) Thus, the Parties agree "that the deposition of Plaintiff should be stayed until the Court rules upon the pending motion for voluntary dismissal." (Id.)

The Court agrees that a voluntary dismissal must be conditional, and thus **GRANTS** the motion for voluntary dismissal with the conditions explained infra. However, because the "stay

4

of a civil case is an extraordinary remedy that should be granted only when justice so requires," Chao v. Fleming, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007), the Court does not grant a protective order imposing a stay. Nevertheless, appreciating the bind in which the Parties find themselves, the Court **SUSPENDS** the scheduling order pending Casey's acceptance of dismissal with the conditions described below. If Casey chooses not to accept these conditions, the case will not be dismissed and the Court will conduct a status conference to set deadlines for the remainder of the case. The Court will also rule on the pending motions for sanctions.

## ANALYSIS

Voluntary dismissals are governed by Fed. R. Civ. P. 41(a), which allows for dismissal of an action by the plaintiff if certain conditions are present, Rule 41(a)(1), or by court order, Rule 41(a)(2). As Casey did not move for voluntary dismissal prior to Defendants' Answer or Motion for Summary Judgment, and the Parties have not stipulated to dismissal, Rule 41(a)(2) governs. Thus, to voluntarily dismiss this matter, Casey requires a court order, which this Court may grant "on terms that [it] considers proper." Fed. R. Civ. P. 41(a)(2). In other words, under Rule 41(a)(2), whether and on what conditions to grant dismissal is within the Court's discretion.

"The primary purpose of Rule 41(a)(2)'s requirement of a court order is to protect the nonmovant from unfair treatment." Walther v. Fla. Tile, Inc., 776 F. App'x 310, 315 (6th Cir. 2019) (citing Grover v. Eli Lilly & Co., 33 F.3d 716, 718 (6th Cir. 1994)). Courts are to consider whether a defendant "would suffer plain legal prejudice as a result of dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit," considering a nonexclusive list of factors to assess legal prejudice, including "(1) defendant's effort and expense of preparation for trial; (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action"; (3) whether plaintiff's explanation for the need to take a

5

dismissal is insufficient, and (4) "whether a motion for summary judgment has been filed by the defendant." Id. (quoting Grover, 33 F.3d at 718). "The [Grover] factors are simply a guide for the trial judge, in whom the discretion ultimately rests." Rosenthal v. Bridgestone/Firestone, Inc., 217 F. App'x 498, 502 (6th Cir. 2007) (internal citation omitted).

Each of the Grover factors are considered below.

I.      **Plaintiff's Motion for Voluntary Dismissal Without Prejudice**

Under the first Grover factor, Casey argues that, because the Parties have filed "only eleven motions" over twelve months, Defendants have not incurred great "effort and expense" and thus would not be prejudiced by a dismissal without prejudice. (ECF No. 74 at PageID 391.) Defendants argue that they would be prejudiced because they are on the verge of re-raising a statute of limitations defense in a motion for summary judgment, and now, if this case is dismissed and then refiled, "Defendants may have to wait years for a refiling and endure a whole new discovery period before being able to raise their dispositive statute-of-limitations arguments on summary judgment." (ECF No. 75 at PageID 406.)

Here, the work involved in preparing the various motions is relevant to any future litigation, as is the discovery conducted so far. See King v. Chase, No. 219CV02658JPMDKV, 2020 WL 8838089, at *2 (W.D. Tenn. Aug. 19, 2020); see also Yandell Constr. Servs., Inc. v. LMR Constr., LLC, No. 1:17-cv-01307-JDB-egb, 2018 WL 4375112, at *3 (W.D. Tenn. Sept. 13, 2018) ("Although the Court notes that conducting over two years of litigation results in no small expense, much of the effort put forth in the discovery phase of this case could presumably be used in any future suit brought by Plaintiff against the two Defendants."). Thus, this factor favors Casey's motion to dismiss without prejudice.

Turning to the second factor, "excessive delay and lack of diligence," Casey argues that

6

he "has litigated the case in a timely and diligent fashion." (ECF No. 74 at PageID 391.) Although Casey originally failed to comply with the order to answer an interrogatory, leading Defendants to file their first motion for sanctions (ECF No. 49), it is true that his conduct overall has not been dilatory. Thus, this factor also favors dismissal without prejudice.

The third Grover factor, the plaintiff's reason for the voluntary dismissal, is inconclusive. Casey asserts that dismissal is required to allow him to balance his "personal obligation to keep confidential the identities and statements of sexual abuse survivors" with "his legal obligation to disclose those identities and statements." (ECF No. 74 at Page ID 392.) Defendants assert, however, that Casey's true motivation is an attempt "to circumvent the 'good cause' standard for amended pleadings," allowing Casey to file a brand-new complaint down the line. (ECF No. 75 at PageID 407–08.) But even if Defendants correctly divine an ulterior motive, that alone would not be grounds to deny the motion. King, 2020 WL 8838089, at *3; see also Warehime v. Louisville Ret. Residence LLC, No. 3:16-CV-00634-GNS, 2017 WL 2312700, at *3 (W.D. Ky. May 26, 2017) ("This Court and others have permitted voluntar[y] dismissal under Fed. R. Civ. P. 41(a)(2) even when the plaintiffs have admitted that they intend to refile their lawsuit in state court . . . .").

The fourth factor, whether a motion for summary judgment has been filed, also favors Casey's position, because no motion has been filed, although Defendants state that one was anticipated.

Therefore, Casey's request for voluntary dismissal without prejudice is appropriate. However, as explained below, because of the unique circumstances currently present in the case, the Court also finds it appropriate to impose conditions on the dismissal, as permitted under Rule 41.

## II.     Conditions on Voluntary Dismissal Without Prejudice

A court's determination of the conditions to impose on voluntary dismissal must be "guided by the purpose of the rule—to protect the nonmovant from unfair treatment." PGT Trucking, Inc. v. Jones, No. 15-1032, 2015 WL 4094265, at *7 (W.D. Tenn. July 7, 2015) (citation modified) (quoting Jones v. W. Reserve Transit Auth., 455 F. App'x 640, 643 (6th Cir. 2012)). "A Rule 41(a)(2) dismissal may be conditioned on whatever terms the district court deems necessary to offset the prejudice the defendant may suffer from a dismissal without prejudice." Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc., 583 F.3d 948, 954 (6th Cir. 2009). These terms are non-appealable unless a plaintiff has "suffered 'legal prejudice' from the conditions imposed by the district court and has not acquiesced in those conditions." Duffy v. Ford Motor Co., 218 F.3d 623, 627 (6th Cir. 2000).

Defendants request that two conditions be placed on Plaintiff if the voluntary dismissal without prejudice is granted.

### A.     Refiling in This Court and Pending Motions for Sanctions

Defendants first request that, if voluntary dismissal without prejudice is granted and Casey's suit is later refiled, "any refiling must occur in this Court" and "the sanctions motions [sh]ould then be addressed." (ECF No. 75 at PageID 398.)

Although it is an extraordinary remedy, the Court has the authority to require a subsequent action be filed in federal court. See Scholl v. Felmont Oil Corp., 327 F.2d 697, 699–701 (6th Cir. 1964) (upholding district court's imposition of condition that the case be refiled only in federal court where "[t]he difficulties confronting [the plaintiff] in proceeding with the trial were of his own making" and the plaintiff accepted the condition). Generally, when a plaintiff is given the choice either to accept the condition of refiling in federal court or to proceed

8

with the current case, then such a dismissal is not "an involuntary adverse judgment," and thus is non-appealable. Id.

This is one of the rare situations in which the extraordinary condition of limiting refiling to federal court is appropriate. Like the plaintiff in Scholl, Casey is experiencing difficulties "of his own making" in the current case, for he may have committed perjury in this matter. He asserted under oath first that "two people in particular . . . reached out to [him] to let [him] know that they personally were abused" (ECF No. 41-1 at PageID 227) and then that "[n]o person contacted [him] . . . to inform him that [they] had also been abused" (ECF No. 62-1 at PageID 315). It seems unlikely that both are true. Although Casey desires to be a faithful confidant to the alleged victims, his good faith toward others may have translated to bad faith to the Court. While the Court is not reaching the issue of whether Casey committed perjury, imposing this condition on voluntary dismissal "protect[s] the nonmovant from unfair treatment." PGT Trucking, 2015 WL 4094265, at *7.

Thus, if Casey refiles an action based on or including these same claims against Defendants, he must do so in this Court, and the motions for sanctions will be taken up at that time.

### B.     Attorney's Fees Upon Refiling

Defendants also argue that, if voluntary dismissal without prejudice is granted and Casey's suit is refiled, "Casey should be required to pay the attorneys fees for the Defendants from the first suit." (ECF No. 75 at PageID 398.)

"If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff

9

has complied." Fed. R. Civ. P. 41(d); see also Noel v. Guerrero, 479 F. App'x 666, 670 (6th Cir. 2012) ("Thus, the district court was not required to dismiss Noel's claims against these two defendants with prejudice in order to protect them from the expense of future litigation arising from the same claims should Noel re-file his action against them."); Bell-Coker v. City of Lansing, No. 1:07-CV-812, 2009 WL 80291, at *4 (W.D. Mich. Jan. 9, 2009) ("Coker need not pay any of the defendants' costs unless she sues them again on these three claims. Nothing in the record suggests that such a limited fee award would unduly burden Coker or excessively deter her from re-filing those claims; for example, she is not proceeding in forma pauperis or pro se.").

Conditioning Casey's refiling on the payment of attorney's fees would "protect the nonmovant from unfair treatment." Walther, 776 F. App'x at 315. Moreover, it is warranted by Casey's conduct in this case. As Defendants have pointed out in their motions for sanctions, he has both "fail[ed] to comply with [a] court order" (ECF No. 49 at PageID 252) and made "contradictory statements under oath" (ECF No. 63 at PageID 322). To both accusations, Casey essentially protests that he has suffered inner turmoil from his promise of confidentiality to the other victims. (See ECF No. 57 at PageID 271; ECF No. 70 at PageID 369.) And yet, as Defendants point out, "Casey should have taken the time to consider this before filing this lawsuit." (ECF No. 75 at PageID 407.) Because he apparently did not do so, Defendants would suffer unfair treatment if Casey overcame his inner turmoil and then sought to begin this case again.

Accordingly, this condition allows Casey to voluntarily dismiss this case while protecting Defendants against the expenses in this case having been wasted, if the case is refiled. In any

event, Casey himself has argued that the cost of the litigation so far is "not excessive." (ECF No. 74 at PageID 390.)

Thus, if Casey refiles an action based on or including these same claims against Defendants, he must first pay reasonable attorney's fees from the first action.

Casey is **ORDERED** to respond within fourteen days from the entry of this Order either accepting these conditions or withdrawing his motion for voluntary dismissal. If no timely response is received, the Court will assume that these conditions have been accepted and will dismiss this matter without prejudice under the conditions.

### III.   Consent Motion for Protective Order Staying Deposition of Plaintiff

The Parties also request "that the deposition of Plaintiff should be stayed until the Court rules upon the pending motion for voluntary dismissal." (ECF No. 76 at PageID 414.) Although a protective order or a stay is not appropriate, for good cause shown, the Court **SUSPENDS** the scheduling order deadlines pending Casey's acceptance of the conditions described above. If Casey declines the conditions, then the motion for voluntary dismissal without prejudice will be denied and the case will proceed. A revised scheduling order will then be required.

### CONCLUSION

For the reasons stated above, Plaintiff is **ORDERED** to respond by **Wednesday, October 22, 2025,** either accepting the conditions imposed by the Court or withdrawing his motion for voluntary dismissal, and the scheduling order is **SUSPENDED**.

**IT IS SO ORDERED,** this 8th day of October, 2025.

s/ Sheryl H. Lipman  
SHERYL H. LIPMAN  
CHIEF UNITED STATES DISTRICT JUDGE